# Quigley *v.* Montgomery & Chester Electric Railway Company, Appellant.

*Street railways—Agreement with landowner as to right of way—Damages.*

Where a landowner grants in writing to a street railway the use of a strip of land through a meadow, and subsequently the company orally agrees to pay him compensation for cutting up the meadow in reaching the strip, the landowner is entitled to recover such compensation, although under the written agreement alone apart from the oral agreement he would have had no claim to compensation.

In an action against a street railway company by a landowner who had granted a right of way over his land, the statement averred " that the defendant . . . . otherwise so constructed said railway as to do great damage and injury to plaintiff's property." At the trial plaintiff introduced evidence of damages resulting from the severance of a three-cornered lot from the other land in the construction of the railway. There was also evidence from which the jury could determine the value of the lot. The defendant did not ask for a bill of particulars or any more definite description of the damages. *Held*, that the averment in the statement was sufficient to cover the testimony presented, and that the court was justified in refusing to charge that plaintiff was not entitled to damages for the cutting off of the lot.

Argued Feb. 8, 1904. Appeal, No. 24, Jan. T., 1903, by defendant, from judgment of C. P. Chester Co., April T., 1900, No. 73, on verdict 'for plaintiff in case of George Quigley v. The Montgomery & Chester Electric Railway Company. . Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and THOMPSON, JJ. Affirmed.

Trespass for injury to land. Before HEMPHILL, P. J.

At the trial it appeared that George Quigley, the plaintiff, entered into an agreement in writing with the defendant which was in part as follows :

" That the party of the first part in and for the consideration of the sum of one dollar ($1.00) in hand well and truly paid by the party of the second part at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, does hereby give and grant to the said Railway Company, its successors and assigns, the right and privilege to survey, locate and lay out a line for its railway, in, over and

upon all that certain piece of land situate in the Township of East Pikeland, County aforesaid, beginning at the line between the property of said George Quigley and John Latshaw, thence in a Southerly direction keeping to the East of the dwelling of said Quigley and along the wall of the barnyard at a distance to be agreed upon, thence bearing to the West and continuing to the Schuylkill Road parallel to the road running to Zion's Church, taking a strip of land twenty feet in width. The fences to be moved by the party of the first part; and the party of the first part doth hereby covenant, promise and agree to and with the party of the second part, its successors and assigns by proper deed of release and conveyance, to transfer to the said party of the second part the strip of ground not exceeding twenty feet in width, upon which said location may be made, if the same be adopted as a permanent location by the party of the second part, and the party of the second part hereby covenants and agrees that, if it adopts the temporary location for the permanent location of its railway, upon the delivery to it of a proper conveyance and release of the party of the first part, to pay the said party of the first part at the rate of one hundred dollars per acre of ground."

The material portions of the statement of claim were as follows :

That said defendant, prior to the bringing of this suit, did enter upon, survey, locate and lay out a line for its railway in, over and upon the land of the plaintiff, situate in East Pikeland township, county aforesaid, and permanently located and constructed the said railway over and upon the same, and in so doing occupied with its tracks, cuts, fills, poles and other appliances and appurtenances a large and valuable tract of said plaintiff's land, without any lawful authority so to do, to plaintiff's great injury ;

That defendant ran and constructed its said line of railway so near the wall of the plaintiff's barnyard, and otherwise so constructed said railway as to do great damage and injury to plaintiff's property ;

That defendant in constructing its railway did great injury and damage to the plaintiff's other land by hauling over it, cutting it up, trampling and destroying grass and herbage, and greatly interfered with plaintiff's use of said other land by de-

stroying fences and inclosures, and causing plaintiff to incur great expense in maintaining and protecting his live stock.

There was evidence that an agent for the defendant had agreed orally that the plaintiff should' receive compensation for injuries to the meadow resulting from its being cut up by hauling.

Defendant presented two points, both of which are fully quoted together with the answers thereto in the opinion of the Supreme Court, where other facts are also stated.

Judgment and verdict for plaintiff for $1,717.25. Defendant appealed.

*Errors assigned* were· (1, 2) answers to points, quoting them; (3) refusal of a new trial.

*H. H. Gilkyson*, for appellant.

*I. Newton Wynn* and *William M. Hayes*, with them *J. Carroll Hayes*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, February 29, 1904:

There are three assignments of error here, only the first two of which need be considered. The third assignment alleges error in the court's refusal to grant a new trial, but there is nothing in the case which would justify us in either reviewing or reversing the judgment of the learned trial judge on this question.

The first·assignment complains that the court erred in denying the appellant's second point which is as follows : " The plaintiff having agreed that the defendant company should use and occupy a strip of land twenty feet wide through the meadow for the purpose of building and operating a trolley road to be built upon trestle work, which strip of land the defendant could not reach and properly use without going over other lands of the plaintiff, the right of way over the latter land, for the purpose intended by the agreement of sale is implied, and of necessity became appurtenant to the land conveyed so long as it cannot be enjoyed otherwise." On the right of the plaintiff, the appellee, to claim damages for the injury done his meadow by the defendant, the appellant com-

pany, while constructing its railway, which is the subject of this point, the court in its general charge said : " So I say if there was nothing more than what appears in the agreement, I should say to you that you could not consider any claim for damages to the meadow. But Mr. Quigley alleges, and in fact that is a matter not in dispute, because it is admitted by Mr. Wanger himself, and testified to by the stone mason who was there at the time, that there was an agreement made, a parol agreement, a verbal agreement made that whatever damage was done to his meadow he would compensate Mr. Quigley for. So that is not in dispute ; that is established as a verbal contract by testimony, clear, precise and indubitable." The court answered the point as follows : " This I must refuse, because there is no question but that a subsequent agreement, verbal agreement, was made by Mr. Wanger with Mr. Quigley about compensation for the cutting up of the meadow, and I have already commented upon that." It will be observed, therefore, that the court held with the appellant that there was an implied right of way over the plaintiff's meadow for the purpose of constructing its railway, and that the only right of the plaintiff to damages for injuries for the use of his land for that purpose was the parol contract entered into between the parties, and which was undisputed as well as clearly established by the testimony in the case. The assignment cannot be sustained.

The third point of the appellant which was refused by the court and is the subject of the second assignment, is as follows : " The plaintiff is not entitled to damages for the cutting off the three cornered lot and the alleged depreciation in the value thereof, damages for the same not being specified in the written contract between the parties by which the trolley road was located along the township line road, nor alleged as an element of damage in the plaintiff's statement, nor any estimate made by the plaintiff in his testimony of any damages due him on that account."

We think the averment of the statement is sufficient to cover a claim for damages resulting from the severance of the three cornered lot from the other land of the appellee by the appellant in the construction of its railway. These damages are clearly within the allegation of the statement " that the de-

242 QUIGLEY *v.* ELECTRIC RAILWAY CO., Appellant.

fendant . . . . otherwise so constructed said railway as to do great damage and injury to plaintiff's property." No bill of particulars nor any more definite or specific description of the damages were demanded by the company, and it cannot now complain of the court in permitting the appellee to recover under the general averment. We are also of opinion that there. was evidence produced at the trial to justify the jury in awarding damages to the appellee for this injury to his land. He and at least two other witnesses were interrogated and testified as to the injuries done to his farm by cutting off the three cornered lot from the other part of his property. While the testimony was somewhat indefinite, and the witnesses did not name any sum as their estimate of the damages the appellee had sustained, yet the facts given in the testimony were sufficient to enable the jury to determine the question. The size of the lot and the manner in which it was cut off were shown by the testimony. It was also shown that since its severance the lot has been practically useless to the appellee. There was also evidence tending to show that before it had been severed from the farm, the lot was worth about what the appellant company had agreed to pay the plaintiff for a like quantity of the land which it had acquired of him by the written contract.

We see no merit in any of the assignments, and, therefore, the judgment is affirmed.